UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**JENNIFER L. ROESLER**                                                                                      **Plaintiff**

v.                                                                              No. 3:20-cv-679-BJB-RSE

**THE STANDARD FIRE INSURANCE**                                                **Defendant**
**CO.**

\* \* \* \* \*

### MEMORANDUM ORDER DENYING REMAND MOTION

Plaintiff Jennifer Roesler suffered severe injuries in a 2019 car accident. After settling with the at-fault driver, Roesler brought this lawsuit against the insurer who issued her own automobile insurance policy to recover underinsured-motorist benefits. Nearly three months after Roesler filed her Complaint, the Defendant, Standard Fire Insurance, removed the suit to federal court on the basis of diversity jurisdiction. Notice of Removal (DN 1) at 2. Although Roesler does not dispute that the parties are diverse or that the amount in controversy exceeds $75,000, she seeks remand to state court on the sole ground that Standard Fire's removal was untimely. Motion to Remand (DN 11-1) at 2. Because the Defendant removed the case within the time period prescribed by federal law, the Court denies Roesler's motion.

### A. Removal Requirements

The removal statute enacted by Congress generally requires defendants to file a notice of removal "within 30 days after the receipt … of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). But "if the case [as] stated by the initial pleading is not removable," then the 30-day clock does not start to run until the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3). A defendant seeking removal must establish the amount in controversy by a preponderance of the evidence, § 1446(c)(2), and "[a]ll doubts as to the propriety of removal are resolved in favor of remand," *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007) (alterations adopted).

This standard creates a familiar difficulty for defendants removing cases from Kentucky state court. Kentucky law prohibits plaintiffs from specifying damages in their original complaint. Ky. R. Civ. P. 8.01. Federal law allows defendants to "assert the amount in controversy" in the notice of removal if "the State practice … does not permit demand for a specific sum," but the district court must "fin[d], by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold of $75,000. § 1446(c)(2). If the court cannot make that finding, then the case heads back to state court. *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493

(6th Cir. 1999) ("All doubts as to the propriety of removal are resolved in favor of remand."). And the temporary detour through federal court amounts to deadweight loss.

Without a dollar amount attached to the complaint, therefore, defendants face a dilemma. When to remove? Before state-court discovery, with a risk of remand because the amount in controversy remains unclear, or after potentially clarifying state-court discovery, with a risk of remand based on the 30-day deadline for removal? *See McCraw v. Lyons*, 863 F. Supp. 430, 433 (W.D. Ky. 1994).

The removal statute accounts for this by contemplating that "information" and "responses to discovery" in a state-court proceeding may clarify the amount in controversy. § 1446(c)(3). But when parties don't exchange damages information collaboratively and efficiently, the removal dilemma grows more acute, and more costly. Often, minimal collaborative effort could avoid unnecessary threshold litigation over the basic question whether federal jurisdiction even exists. As the Tenth Circuit recently explained:

> Litigation concerning when the defendant realized or should have realized the amount in controversy or the like can expend considerable resources of the court and the parties. And the expenditure is wholly unnecessary. Any time the plaintiff wishes to start the 30-day clock, it can provide the defendant with an unambiguous notice of what is being claimed.

*Paros Properties LLC v. Colorado Cas. Ins.*, 835 F.3d 1264, 1270 (10th Cir. 2016). Is this inefficiency just the cost of policing the federalism and comity interests at stake when plaintiffs and defendants disagree about whether to litigate in state or in federal court? After all, "removal jurisdiction [is] to be construed strictly…. because the removal jurisdiction of the federal courts encroaches on the jurisdiction of state courts." *Ellis v. Wal-Mart Stores E., LP*, No. CV 09-361, 2010 WL 11527355, at *2 (E.D. Ky. Jan. 27, 2010). Yet unnecessary *litigation* over removal can disrupt and delay state- and federal-court proceedings alike.

**B. Standard Fire's Removal**

Roesler contends Standard Fire removed this case too late. But despite having ample opportunity to clarify the damages at issue, she slowed Standard Fire's efforts to determine the amount in controversy.

Shortly after receiving the complaint, Standard Fire sent a request for admission asking Roesler about the amount in controversy. Request for Admission (DN 14-4) at 2. This was appropriate: rather than removing first and asking questions later, potentially requiring unnecessary remand litigation, Standard Fire acted promptly to learn whether this case satisfied the prerequisites for federal jurisdiction. *See, e.g.*, *Sage Bauer, LLC v. Alltrade Serv. Solutions, LLC*, No. 3:21-cv-144 (W.D. Ky. May 26, 2021).[1]

---

[1] Regardless of whether "when in doubt, remove" is "good advice that should appear in the heading of a defendants' best practices guide," this Court has recognized that "it is not a rule of law." *Graves v. Standard Ins. Co.*, 66 F. Supp. 3d 920, 923 (W.D. Ky. 2014).

2

Roesler responded to this request two weeks later—three days after she argues the deadline to remove had passed—and stated that she was "without sufficient information to admit or deny this Request." Response to RFA (DN 14-5) at 2. If at this point the *plaintiff* lacked sufficient information to determine the amount in controversy, presumably the defendant did too—and couldn't be denied removal for failing to act on information it didn't yet have. *See Forest Creek Townhomes, LLC v. Carroll Prop. Mgmt., LLC*, 695 F. App'x 908, 912 (6th Cir. 2017) ("[T]he thirty-day period for removal begins to run when the initial pleading or a subsequent paper *first* provides solid and unambiguous information that the case is removable.") (emphasis added) (internal quotation marks and citation omitted). Sensibly, Standard Fire promptly notified Roesler that this response did not comply with the Kentucky Rules of Civil Procedure. Response to Motion for Remand (DN 14) at 4.

Two more weeks passed before Roesler responded. And when she did, she filed an amended discovery response indicating that her damages would *not* satisfy the amount-in-controversy requirement. Amended Response to RFA (DN 14-6) at 2. At this point, Standard Fire still lacked sufficient information to remove.

The next day, however, Roesler informed Standard Fire that the previous day's response was erroneous. Roesler filed a second amended response stating that she sought damages in excess of $75,000. Second Amended Response to RFA (DN 14-8) at 2. At this point her counsel sent Standard Fire quite a candid email: "Feel free to remove us to federal court." Email (DN 14-7) at 2.

Standard Fire did just that—within the 30 days afforded defendants who learn of the basis for federal jurisdiction *outside* the plaintiff's complaint. *See* § 1446(b)(3). Less than a month after the email from Roesler's counsel, Standard Fire removed the case to federal court. Notice of Removal at 2–3. Based on the plain language of the Rule and the correspondence between the parties in state court, Standard Fire's removal was timely.

### C. Roesler's Remand Motion

Yet Roesler has filed a motion to remand, resting her request on a letter that she sent to the Defendant several months before filing her complaint. *See* Settlement Letter (DN 11-4). According to Roesler, this letter should have put Standard Fire on notice that the amount in controversy exceeded $75,000, notwithstanding her later contrary representations in litigation. In light of this pre-suit information, therefore, Roesler contends the Defendant must've removed the suit within thirty days of receiving the complaint. Motion to Remand at 4–7 (citing *Labuy v. Peck*, No. 5:10-cv-158, 2010 WL 4313336, at *2 (E.D. Ky. Oct. 25, 2010); *Conder v. Best Value Inc.*, No. 3:08-cv-411, 2008 WL 4601915, at *2 (W.D. Ky. Oct. 15, 2008)).[2]

---

[2] Neither citation provides the support that Roesler needs to prevail. In both cases, the court considered only whether defendants could use pre-suit demand letters as probative evidence to satisfy their burden of showing that the amount in controversy was met. These decisions do not consider the question whether pre-suit letters qualify as "other paper" that may start § 1446(b)'s 30-day clock.

The parties vigorously dispute whether the letter qualifies as a "demand" letter sufficient to put Standard Fire on notice. *See, e.g.*, *Whisman v. Perdue Farms, Inc.*, No. 507-55, 2007 WL 1150287, at *1 (E.D. Ky. Apr. 18, 2007) (using a pre-suit demand letter to reject plaintiff's post-removal affirmation that the amount in controversy was less than $75,000). But the Court need not resolve that controversy. The statute doesn't refer to a demand letter; it refers to "a copy of an amended pleading, motion, order or other paper." No matter how we label Roesler's pre-suit letter, it does not qualify as an "other paper" under § 1446(b)(3) whose "receipt" would trigger a defendant's 30-day removal clock on the future date when the defendant received a complaint. *See Ellis*, 2010 WL 11527355, at *4.

Section 1446(b) contemplates a two-step process for removal that determines when the 30-day window opens.

1. *First*, the parties and the court must examine the contents of the initial pleading to determine if the case is removeable. If so, the 30 days begins immediately because jurisdiction is apparent based on the complaint. § 1446(b)(1). If not, the 30 days will begin later because "the case stated by the initial pleading is not removable." § 1446(b)(3).

2. *Second*, if (and only if) that initial pleading did not show the case was removable, § 1446(b)(3) goes on to explain what *would* trigger the defendant's 30-day window for removal: "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

This sequence naturally contemplates that the "other paper" received by a defendant to clarify the complaint would arrive *after* the defendant receives the initial complaint in need of clarification. "A defendant who is wary of losing his removal rights must therefore assess whether the case articulated in the plaintiff's complaint, and not in pre-litigation correspondence, provides ground to invoke the jurisdiction of the federal courts." *Ellis*, 2010 WL 11527355, at *3. As the Fifth Circuit has recognized, "[t]he plain language of … § 1446(b) requires that if 'other paper' is to start the thirty-day time period, a defendant must receive the 'other paper' after receiving the initial pleading. The second [part] of § 1446(b) applies by its terms only 'if the case stated by the initial pleading is not removable.'"[3] *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992).[4] Otherwise we'd face a linguistic and chronological anomaly. The statute times the 30-day removal window to the defendant's "receipt" of the "other paper." But a pre-suit letter,

---

[3] The Plaintiff relies on *Golden Apple Management Co., Inc. v. GEAC Computers, Inc.* for the proposition that a settlement letter can provide a defendant with sufficient notice of the amount in controversy. 990 F. Supp. 1364 (M.D. Ala. 1998). That court's analysis is readily distinguishable from this situation, however, because the plaintiff in *Golden Apple* sent the demand letter *after* it had filed the complaint. *Id.* at 1368. The question of pre-complaint communications preemptively triggering the 30-day clock wasn't even at issue. Roesler's demand letter, by contrast, predates her complaint by over two months and therefore squarely raises the critical question: whether the statute enacted by Congress refers to "other paper" whenever sent, or only "other paper" that followed the complaint.

[4] Although Congress has amended § 1446(b) on three occasions since the Fifth Circuit decided *Chapman*, the text and substance of what is today § 1446(b)(3) remains unaltered.

4

contrary to the statutory text, wouldn't actually fire the starter pistol for removal; it would set a fuse, of uncertain duration, to detonate only once the complaint arrived and failed to clearly indicate the amount in controversy. The defendant cannot know whether the "initial pleading is not removable" until receiving the complaint. Yet if the statute embraced pre-litigation communications, the period for removal would already be running, in a sense, contingent on whenever the plaintiff filed a complaint. This complicated reading doesn't much sound like Congress' instruction to remove "within thirty days after receipt by the defendant" of the "other paper."

The statute provides further textual corroboration as well. All the "neighboring statutory terms" surrounding "other paper" refer to post-complaint litigation filings: amended pleadings, motions, and orders. *Kuxhausen v. BMW Fin. Servs.*, 707 F.3d 1136, 1142 (9th Cir. 2013). The Ninth Circuit recognized that because these filings "cannot logically precede the initial pleading," it follows "that 'other paper' does not embrace 'any document received prior to receipt of the initial pleading.'" *Id.* (quoting *Carvalho v. Equifax Info. Servs.*, 629 F.3d 876, 885–86 (9th Cir. 2010)). This follows a basic canon of statutory interpretation: *ejusdem generis*. "[W]here, as here, a more general term follows more specific terms in a list, the general term is usually understood to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018) (quotation marks omitted).

The statute goes on to define "other paper," in part, by reference to discovery rather than extrajudicial signals: "If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy *in the record of the State proceeding, or in responses to discovery*, shall be treated as an 'other paper' under subsection (b)(3)." § 1446(b)(3)(A) (emphasis added). So the statute expressly accounts for the complaint, amended pleadings, motions, orders, and "other paper," defined to include pre-removal state-court discovery—all papers filed in litigation and after litigation commences. *See Nikollaj v. Fed. Ins. Co.*, 472 F. Supp. 3d 1138, 1140 (M.D. Fla. 2020) (an insurance adjuster's pre-suit estimate could not be "other paper" because the defendant received the estimate *after* the initial pleading). Nothing in the statute suggests Congress wanted defendants and courts to nevertheless set their removal clocks according to pre-litigation signals whose import may or may not be apparent to counsel, not to mention judges, at the time of removal. An interpretation that inserted all manner of informal pre-litigation correspondence into this analysis would create significant tension with the litigation-focused structure Congress enacted.

The facts of this case show the risk of hinging post-complaint removal deadlines on pre-suit activity. Here, the information Roesler says Standard Fire should've relied on was flatly contradicted by information Roesler later supplied in litigation. In response to Standard Fire's request for admission, Roesler didn't reaffirm—or even acknowledge—the numbers in the demand letter; she said she lacked sufficient information to quantify the amount in controversy, despite "reasonable inquiry." Response to RFA at 2.

Why should the less formal pre-suit information trump more formal representations in litigation? Roesler doesn't say—and Congress said the opposite. Plaintiff's motion to remand effectively asks the Court to hold the Defendant to a standard that Roesler herself didn't follow regarding the ascertainability of damages, despite her superior knowledge of her injury and

5

requested relief. The statute offers the Court no basis to reward the withholding of information and hold that the pre-suit letter started the 30-day clock on the date Standard Fire received the complaint.

Because Roesler's lawsuit did not make clear the amount in controversy until after the Defendant's second prompt request, the Court denies the motion to remand. Based on the information Roesler provided Standard Fire, it could not have "ascertained that the case is one which is or has become removable" until Roesler first indicated that she sought more than $75,000 on September 4, 2020.[5] Standard Fire then removed the case on October 2—within § 1446(b)'s 30-day deadline.

Benjamin Beaton, District Judge
United States District Court

July 27, 2021

---

[5] The Defendant emphasizes that there were approximately two weeks of delay attributable to the state court's entry of an agreed order accepting the Plaintiff's second amended response to the request for admission. Response to Motion for Remand at 17–18. But the Court fails to see the relevance of this step, given that the Federal Rules focus on the defendant's knowledge, not the status of the state court proceeding or the formality of the plaintiff's filing conveying that knowledge.